**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| JOSHUA HARDY, Individually and for Others Similarly Situated, | **Case No.** _____ |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| AUDUBON FIELD SOLUTIONS, LLC and AUDUBON ENGINEERING COMPANY, LLC. | FLSA Collective Action Rule 23 Class Action |
| Defendant. | |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Joshua Hardy (Hardy) brings this class and collective action lawsuit to recover unpaid wages and other damages from Audubon Field Solutions, LLC (Field Solutions) and Audubon Engineering Company, LLC (Engineering) (collectively referred to as Audubon Companies) under the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA).

2.      Field Solutions and Engineering – as a single, unified enterprise, referred to as Audubon Companies – employed Hardy as one of its Inspectors (defined below) in New Mexico and Texas.

3.      Audubon Companies' Inspectors regularly work more than 40 hours a workweek.

4.      But Audubon Companies does not pay them overtime.

5.      Instead, Audubon Companies misclassifies Hardy and the other Inspectors as independent contractors and pays them a day rate and no overtime.

6.      But Audubon Companies attempts to disguise this day rate as hourly pay (Audubon's "disguised day rate pay scheme").

7.      Specifically, Audubon Companies pays Hardy and its other Inspectors a flat day rate based on a 10 or 12-hour workday, regardless of the actual number of hours they work that day (or that workweek) and Audubon Companies fails to pay them overtime when they work in excess of 40 hours a workweek.

8.      Audubon Companies pays all the Inspectors according to its disguised day rate pay scheme.

9.      Additionally, Audubon Companies pays the Inspectors "per diems" only for days worked, and not for each day they spent away from home, which must be included in the regular rate of pay calculation for overtime purposes.

10.     Audubon's disguised day rate pay scheme violates the FLSA and NMMWA by depriving Hardy and the other Inspectors of overtime compensation when they work more than 40 hours in a workweek.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

12.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13.     This Court has specific personal jurisdiction over Audubon Companies based on its substantial contacts with, and conduct directed towards, New Mexico that form the basis of this action.

14.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District. 28 U.S.C. § 1391(b)(2).

15.     Specifically, Audubon Companies employed Hardy and the other inspectors and imposed its disguised day rate pay scheme on them in New Mexico.

2

16.     Hardy has not executed an arbitration agreement with Audubon Companies regarding any of the allegations contained in this Complaint.

**PARTIES**

17.     Audubon Companies employed Hardy as an inspector in in Texas and New Mexico from approximately June 2022 through March 2024.

18.     Throughout his employment, Audubon Companies paid Hardy under its disguised day rate pay scheme.

19.     Audubon Companies also paid Hardy per diems, but only on days he actually worked.

20.     Hardy's written consent is attached as **Exhibit 1**.

21.     Hardy brings this class and collective action on behalf of himself and all other similarly situated Audubon Companies Inspectors who Audubon Companies paid under its disguised day rate pay scheme.

22.     Audubon Companies pays each of these Inspectors a flat day rate, regardless of the actual number of hours they actually work.

23.     Thus, Audubon Companies uniformly fails to pay these Inspectors the "time and a half" overtime premium for their hours worked over 40 a workweek in violation of the FLSA and NMMWA.

24.     The putative FLSA collective of similarly situated employees is defined as:

> **All inspectors who worked for or on behalf of Audubon Companies who Audubon Companies paid under its disguised day rate pay scheme at any time during the past 3 years through final resolution of this Action (the "FLSA Collective Members").**

25.     The putative class of similarly situated employees is defined as:

> **All inspectors who worked for or on behalf of Audubon Companies in New Mexico who Audubon Companies paid under its disguised day rate pay scheme (the "New Mexico Class Members").**

26.     The FLSA Collective Members and the New Mexico Class Members are collectively referred to as the "Inspectors."

27.     The Inspectors can be readily ascertained from Audubon Companies' business and personnel records.

28.     Field Solutions is a Louisiana limited liability company headquartered in Metairie, Louisiana.

29.     Field Solutions may be served through its registered agent: **CT Corporation System, 206 S Coronado Ave, Espanola, New Mexico 87532**.

30.     Engineering is a Louisiana limited liability company headquartered in Metairie, Louisiana.

31.     Engineering may be served through its registered agent: **CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816**.

## FLSA COVERAGE

32.     At all relevant times, Field Solutions was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

33.     At all relevant times, Engineering was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

34.     At all relevant times, Field Solutions was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

35.     At all relevant times, Engineering was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

36.     At all relevant times, Field Solutions was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

or otherwise working on goods or materials – such as cell phones, computers, and personal protective equipment – that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

37.     At all relevant times, Engineering was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, and personal protective equipment – that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

38.     At all relevant times, Field Solutions has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

39.     At all relevant times, Engineering has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

40.     At all relevant times, Hardy and the other Inspectors were Field Solutions' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

41.     At all relevant times, Hardy and the other Inspectors were Engineering's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

42.     At all relevant times, Hardy and the other Inspectors were engaged in commerce or in the production of goods for commerce.

43.     Field Solutions treated Hardy and the other Inspectors as employees and uniformly dictated the pay and other employment practices it applied to them.

44.     Engineering treated Hardy and the other Inspectors as employees and uniformly dictated the pay and other employment practices it applied to them.

45.     Field Solutions' misclassification of Hardy and the other Inspectors as independent contractors does not alter their status as employees for purposes of the FLSA.

46.     Engineering's misclassification of Hardy and the other Inspectors as independent contractors does not alter their status as employees for purposes of the FLSA.

47.     Field Solutions and Engineering – as a single, unified enterprise, Audubon Companies – paid Hardy and the other Inspectors under its disguised day rate pay scheme.

48.     Audubon Companies applied its disguised day rate pay scheme to Hardy and the other Inspectors regardless of any allegedly individualized factors, such as specific job title or geographic location.

49.     As a result of Audubon Companies' disguised day rate pay scheme, Hardy and the other Inspectors did not receive overtime wages when they worked more than 40 hours in a workweek.

50.     Audubon Companies' disguised day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

FACTS

51.     Audubon Companies describes itself "as a leading provider of engineering, procurement, construction (EPC), construction management (EPCM), fabrication (EPFC), consulting, and technical services for the energy, chemicals, renewables, power and utility, and industrial markets."[1]

52.     Audubon Companies boasts that "[w]ith [its] integrated services, we deliver projects large and small throughout the entire project lifecycle."[2]

53.     Through Audubon Engineering Company, Audubon Companies provides coordination of inspections and "review & issuance of inspection reports."[3]

---

[1] https://auduboncompanies.com/who-we-are/about-us/ (last visited August 19, 2024).
[2] *Id.*
[3] https://auduboncompanies.com/capabilities/engineering/procurement/ (last visited August 19, 2024).

54.     And through Audubon Field Solutions, Audubon Companies provides a "comprehensive range of inspection services."[4]

55.     Field Solutions and Engineering as a single, unified enterprise – Audubon Companies – hires workers, such as Hardy and the other Inspectors, who it holds out as "expert inspectors [with] decades of technical experience in construction and industrial operations," to provide inspection services, including in Texas and New Mexico.

56.     Audubon Companies uniformly misclassifies Hardy and the other Inspectors as independent contractors to avoid paying them overtime wages.

57.     But Audubon Companies does not hire Hardy and the other Inspectors on a project-by-project basis.

58.     Rather, Audubon Companies hires and treats Hardy and the other Inspectors just like regular employees.

59.     Despite misclassifying Hardy and the other Inspectors as independent contractors, Audubon Companies controls all meaningful aspects of their employment.

60.     Audubon Companies controls Hardy's and the other Inspectors' rate and method of pay.

61.     Hardy and the other Inspectors rely on Audubon Companies for work and compensation.

62.     Indeed, Hardy and the other Inspectors have little or no opportunity to experience a profit or loss related to their employment.

63.     Their income from their work is limited to the day rate Audubon Companies pays them.

---

[4] https://auduboncompanies.com/capabilities/field-services/inspection/ (last visited August 19, 2024).

64.    Hardy and the other Inspectors do not share in Audubon Companies' financial success.

65.    Hardy and the other Inspectors cannot contract or subcontract the work Audubon Companies assigns them.

66.    Audubon Companies controls Hardy's and the other Inspectors' schedules and assignments.

67.    Audubon Companies controls Hardy's and the other Inspectors' work.

68.    Audubon Companies requires Hardy and the other Inspectors to follow Audubon Companies' (and its client's) policies, procedures, and protocols.

69.    Hardy's and the other Inspectors' work must strictly adhere to the quality standards put in place by Audubon Companies (and its clients).

70.    And Hardy and the other Inspectors take direction from, and are supervised by, Audubon Companies personnel.

71.    Hardy and the other Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

72.    Indeed, the daily and weekly activities of Hardy and the other Inspectors are routine and largely governed by standardized procedures and checklists created by Audubon Companies.

73.    Virtually every job function is predetermined by Audubon Companies, including the tools and equipment used to perform inspections, the inspections to perform, the schedule of work, and related work duties.

74.    Without the job Hardy and the other Inspectors perform, Audubon Companies would not be able to complete its core business objective of providing inspection services to its oil and gas industry clients.

75.    The work Hardy and the other Inspectors perform is an essential and integral part of Audubon Companies' core inspection services operations.

76.    Hardy and the other Inspectors do not substantially invest in the tools and equipment required to complete the overall job to which they are assigned.

77.    Rather, Audubon Companies incurs the large-scale business and operating expenses like marketing, job sites, tools, and materials.

78.    Hardy and the other Inspectors do not market their services while employed by Audubon Companies.

79.    Audubon Companies sets Hardy's and the other Inspectors' work schedules, which prohibits them from working other jobs while working for Audubon Companies.

80.    At all relevant times, Audubon Companies has maintained control, oversight, and direction of Hardy and the other Inspectors, including, but not limited to, hiring, firing, disciplining, and other employment practices.

81.    In sum, as a matter of economic reality, under federal and New Mexico law, Hardy and the other Inspectors are Audubon Companies' employees. *See* N.M.S.A. § 51-1-42(F)(5).

82.    Hardy and the other Inspectors regularly work more than 40 hours a workweek.

83.    But Audubon Companies does not pay Hardy and the other Inspectors overtime wages when they work more than 40 hours in a workweek.

84.    Instead, Audubon Companies pays Hardy and the other Inspectors under its disguised day rate pay scheme.

85.    Even if their exact job titles and job duties differ somewhat, Hardy and the other Inspectors are subject to the same or similar pay practice – Audubon Companies' disguised day rate pay scheme – for similar work.

86.     For example, Hardy worked for Audubon Companies as a lead inspector in Texas and New Mexico from approximately June 2022 through March 2024.

87.     As a lead inspector, Hardy's primary duties consisted of overseeing the work of other Inspectors and inspected equipment, including pump systems, pumpjacks, injection wells, saltwater disposal units, etc. to ensure the equipment was in good working condition and operating safely.

88.     Throughout his employment, Audubon Companies paid Hardy under its disguised day rate pay scheme.

89.     Hardy typically worked 10 to 12+ hours a day for 5 to 6 days a week (50 to 72 hours a workweek).

90.     Audubon Companies (and its clients) set Hardy's schedule.

91.     Hardy works as directed by Audubon Companies (and its clients).

92.     Despite knowing Hardy regularly works overtime, Audubon Companies did not pay him overtime wages.

93.     Instead, Audubon Companies paid Hardy according to its disguised day rate pay scheme.

94.     That is, Audubon Companies paid Hardy a day rate based on a flat "10-hour" day, regardless of the actual number of hours he works that day (or that workweek).

95.     For example, when Hardy worked 4 days in a workweek, Audubon Companies paid him for 40 "hours," regardless of the actual number of hours he worked those days (or that workweek):

| Invoice for Inspection Services provided as follows: | | | | | |
| --- | --- | --- | --- | --- | --- |
| Inventory / Data Collection - Oxy Project | | | | | |
| Week Ending 1/20/2023 | | | | | |
| | | | | | |
| | | | Dates of Service | Quantity - Hrs, Mileage, Expenses | Inspector Rate $ | Total $ |
| Client/Project: | AIS/Job #024463-001 | | 1/14/2023 | 0 | $63.00 | 0.00 |
| | Mileage | | | 0 | $0.655 | 0.00 |
| | Per diem | | | 0 | $160.00 | 0.00 |
| | Tech Reimbursment | | | 0 | $22.00 | 0.00 |
| Client/Project: | AIS/Job #024463-001 | | 1/15/2023 | 0 | $63.00 | 0.00 |
| | Mileage | | | 0 | $0.655 | 0.00 |
| | Per diem | | | 0 | $160.00 | 0.00 |
| | Tech Reimbursment | | | 0 | $22.00 | 0.00 |
| Client/Project: | AIS/Job #024463-001 | | 1/16/2023 | 0 | $63.00 | 0.00 |
| | Mileage | | | 0 | $0.655 | 0.00 |
| | Per diem | | | 0 | $160.00 | 0.00 |
| | Tech Reimbursment | | | 0 | $22.00 | 0.00 |
| Client/Project: | AIS/Job #024463-001 | | 1/17/2023 | 10 | $63.00 | 630.00 |
| | Mileage | | | 88 | $0.655 | 57.64 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job # | | 1/18/2023 | 10 | $63.00 | 630.00 |
| | Mileage | | | 85 | $0.655 | 55.68 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job # | | 1/19/2023 | 10 | $63.00 | 630.00 |
| | Mileage | | | 111 | $0.655 | 72.71 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job # | | 1/20/2023 | 10 | $63.00 | 630.00 |
| | Mileage | | | 126 | $0.655 | 82.53 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| | | Total in USD $ | | | | 3,516.55 |

96.    When Hardy worked 5 days in a workweek, Audubon Companies paid him for 50 "hours," regardless of the actual number of hours he worked those days (or that workweek):

| Invoice for Inspection Services provided as follows: | | | | | |
| --- | --- | --- | --- | --- | --- |
| Inventory / Data Collection - Oxy Project | | | | | |
| Week Ending 1/26/24 | | | | | |
| | | | | | |
| | | | Dates of Service | Quantity - Hrs, Mileage, Expenses | Inspector Rate $ | Total $ |
| Client/Project: | AIS/Job #024463-001 | | 1/20/2024 | 10 | $63.00 | 630.00 |
| | Mileage | | | 134 | $0.670 | 89.78 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job #024463-001 | | 1/21/2024 | 10 | $63.00 | 630.00 |
| | Mileage | | | 134 | $0.670 | 89.78 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job #024463-001 | | 1/22/2024 | 10 | $63.00 | 630.00 |
| | Mileage | | | 97 | $0.670 | 64.99 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job #024463-001 | | 1/23/2024 | 10 | $63.00 | 630.00 |
| | Mileage | | | 98 | $0.670 | 65.66 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job # | | 1/24/2024 | 10 | $63.00 | 630.00 |
| | Mileage | | | 142 | $0.670 | 95.14 |
| | Per diem | | | 1 | $160.00 | 160.00 |
| | Tech Reimbursment | | | 1 | $22.00 | 22.00 |
| Client/Project: | AIS/Job # | | 1/25/2024 | 0 | $63.00 | 0.00 |
| | Mileage | | | 0 | $0.670 | 0.00 |
| | Per diem | | | 0 | $160.00 | 0.00 |
| | Tech Reimbursment | | | 0 | $22.00 | 0.00 |
| Client/Project: | AIS/Job # | | 1/26/2024 | 0 | $63.00 | 0.00 |
| | Mileage | | | 0 | $0.670 | 0.00 |
| | Per diem | | | 0 | $160.00 | 0.00 |
| | Tech Reimbursment | | | 0 | $22.00 | 0.00 |
| | | Total in USD $ | | | | 4,465.35 |

97.    When Hardy worked 6 days in a workweek, Audubon Companies paid him for 60 "hours," regardless of the actual number of hours he worked those days (or that workweek):

| Invoice for Inspection Services provided as follows: | | | | |
|---|---|---|---|---|
| Inventory / Data Collection - Oxy Project | | | | |
| Week Ending 1/27/2023 | | | | |
| | | | | |
| | | | | |
| | Dates of Servcie | Quantity - Hrs, Mileage, Expenses | Inspector Rate $ | Total $ |
| Client/Project: AIS/Job #024463-001 | 1/21/2023 | 10 | $63.00 | 630.00 |
| Mileage | | 126 | $0.655 | 82.53 |
| Per diem | | 1 | $160.00 | 160.00 |
| Tech Reimbursment | | 1 | $22.00 | 22.00 |
| Client/Project: AIS/Job #024463-001 | 1/22/2023 | 10 | $63.00 | 630.00 |
| Mileage | | 123 | $0.655 | 80.57 |
| Per diem | | 1 | $160.00 | 160.00 |
| Tech Reimbursment | | 1 | $22.00 | 22.00 |
| Client/Project: AIS/Job #024463-001 | 1/23/2023 | 10 | $63.00 | 630.00 |
| Mileage | | 131 | $0.655 | 85.81 |
| Per diem | | 1 | $160.00 | 160.00 |
| Tech Reimbursment | | 1 | $22.00 | 22.00 |
| Client/Project: AIS/Job #024463-001 | 1/24/2023 | 0 | $63.00 | 0.00 |
| Mileage | | 0 | $0.655 | 0.00 |
| Per diem | | 0 | $160.00 | 0.00 |
| Tech Reimbursment | | 0 | $22.00 | 0.00 |
| Client/Project: AIS/Job # | 1/25/2023 | 10 | $63.00 | 630.00 |
| Mileage | | 126 | $0.655 | 82.53 |
| Per diem | | 1 | $160.00 | 160.00 |
| Tech Reimbursment | | 1 | $22.00 | 22.00 |
| Client/Project: AIS/Job # | 1/26/2023 | 10 | $63.00 | 630.00 |
| Mileage | | 128 | $0.655 | 83.84 |
| Per diem | | 1 | $160.00 | 160.00 |
| Tech Reimbursment | | 1 | $22.00 | 22.00 |
| Client/Project: AIS/Job # | 1/27/2023 | 10 | $63.00 | 630.00 |
| Mileage | | 124 | $0.655 | 81.22 |
| Per diem | | 1 | $160.00 | 160.00 |
| Tech Reimbursment | | 1 | $22.00 | 22.00 |
| | Total in USD $ | | | 5,368.49 |

98.    But Hardy regularly worked more than 10 hours a day.

99.    Nonetheless, Audubon Companies only paid him for 10 hours each day he actually worked, regardless of the number of hours he actually worked that day.

100.    And despite knowing Hardy regularly worked in excess of 40 hours a workweek, Audubon Companies did not pay him overtime wages.

101.    Further, Audubon Companies paid Hardy a "per diem" of $60 to $160 a workday, but only on days that he actually worked.

102.    Therefore, the "per diem" paid by Audubon Companies to Hardy was tied to his hours worked, rather than expenses incurred.

103.    Likewise, Audubon Companies pays the other Inspectors a "per diem" but only on days they actually worked.

104.    The "per diem" thus must be included in Hardy's and the other Inspectors' regular rate of pay when calculating overtime compensation.

105.    And Audubon Companies pays all the Inspectors according to the same disguised day rate pay scheme is imposed on Hardy.

106.    That is, Audubon Companies pays all the Inspectors a day rate based on a flat 10 or 12-hour day, regardless of the actual number of hours they work that day (or that workweek), and Audubon fails to pay them overtime when they work more than 40 hours in a workweek.

107.    Like Hardy, the other Inspectors typically work 10 to 12+ hours a day for 5 to 6 days a week (50 to 72 hours a workweek).

108.    And like Hardy, the other Inspectors work in accordance with the schedule set by Audubon Companies (and its clients).

109.    Despite knowing its Inspectors regularly work overtime, Audubon Companies does not pay them overtime wages when they work more than 40 hours in a workweek, in willful violation of the FLSA and in violation of the NMMWA.

110.    And Audubon Companies never paid Hardy and the other Inspectors on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

111.    Because Audubon Companies fails to pay Hardy and the other Inspectors on a "salary basis," they are all non-exempt employees entitled to overtime.

112.    But Audubon Companies does not pay Hardy and the other Inspectors overtime when they work more than 40 hours in a workweek, in willful violation of the FLSA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

113.    Hardy brings his claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

114.    Like Hardy, the other Inspectors are uniformly victimized by Audubon Companies' disguised day rate pay scheme.

115.    Other Inspectors worked with Hardy and indicated they were paid in the same manner, performed similar work, and were subject to Audubon Companies' disguised day rate pay scheme.

116.    Based on his experience with Audubon Companies, Hardy is aware Audubon Companies' disguised day rate pay scheme was imposed on the other Inspectors.

117.    The Inspectors are similarly situated in the most relevant respects.

118.    Any relevant exemption defenses would require Audubon Companies to pay the Inspectors on a "salary basis."

119.    Because Audubon Companies' disguised day rate pay scheme fails the "salary basis" test, the specific job duties performed by the Inspectors are largely irrelevant.

120.    The only *relevant* inquiries are whether the Inspectors were paid according to Audubon Companies disguised day rate pay scheme (which, they were), and whether that uniform pay plan violates the "salary basis" test.

121.    Therefore, specific job titles or precise job locations of the various Inspectors do not prevent class or collective treatment.

122.    Rather, Audubon Companies' disguised day rate pay scheme renders Hardy and the other Inspectors similarly situated for the purposes of determining their right to overtime pay.

123.    Audubon Companies' records reflect the number of days and/or hours recorded worked each workweek by the Inspectors.

124.    The back wages owed to Hardy and the other Inspectors can therefore be calculated using the same formula applied to the same records.

125.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Audubon Companies' records, and there is no detraction from the common nucleus of liability facts.

126.    Therefore, the issue of damages does not preclude class or collective treatment.

127.    Hardy's experiences are therefore typical of the experiences of the other Inspectors.

128.    Hardy has no interest contrary to, or in conflict with, the other Inspectors that would prevent class or collective treatment.

129.    Like each Inspector, Hardy has an interest in obtaining the unpaid wages owed under federal and New Mexico law.

130.    Hardy and his counsel will fairly and adequately protect the interests of the Inspectors.

131.    Hardy retained counsel with significant experience in handling complex class and collective action litigation.

132.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

133.    Absent this class and collective action, many Inspectors will not obtain redress for their injuries, and Audubon Companies will reap the unjust benefits of violating the FLSA and NMMWA.

134.    Further, even if some of the Inspectors could afford individual litigation, it would be unduly burdensome to the judicial system.

135.    Indeed, the multiplicity of actions would create a hardship for the Inspectors, the Court, and Audubon Companies.

136.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Inspectors' claims.

137.    The questions of law and fact that are common to each Inspector predominate over any questions affecting solely the individual members.

138.    Among the common questions of law and fact are:

      a.    Whether Audubon Companies misclassified the Inspectors as independent contractors;

b.      Whether, as a matter of economic reality under federal and under New Mexico law, the Inspectors were Audubon Companies' employees;

c.      Whether Audubon Companies applied its disguised day rate pay scheme to the Inspectors;

d.      Whether Audubon Companies' disguised day rate pay scheme deprived Hardy and the other Inspectors of the overtime wages they are owed under the FLSA and NMMWA;

e.      Whether Audubon Companies decision not to pay Hardy and the other Inspectors overtime was made in good faith; and

f.      Whether Audubon Companies' FLSA violations were willful.

139.    Hardy knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

140.    Audubon Companies' disguised day rate pay scheme deprived Hardy and the other Inspectors of the overtime wages they are owed under federal and New Mexico law.

141.    There are many similarly situated Inspectors who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

142.    The Inspectors are known to Audubon Companies, are readily identifiable, and can be located through Audubon Companies' business and personnel records.

### AUDUBON COMPANIES' VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

143.    Audubon Companies knew it controlled the Inspectors' rates of pay.

144.    Audubon Companies knew it controlled the Inspectors' method of pay.

145.    Audubon Companies knew it controlled the Inspectors' schedules.

146.    Audubon Companies knew it prohibited the Inspectors' from straying from Audubon Companies policies, procedures, and protocols in performing their job duties.

147.    Audubon Companies knew it did not require the Inspectors to possess any specialized skillset other than that maintained by all workers in their respective job positions.

148.    Audubon Companies knew the Inspectors' work was integral to Audubon Companies' core business operations.

149.    Audubon Companies knew its investment in the tools and equipment necessary for the Inspectors to perform their jobs relatively outweighed any investment of the Inspectors.

150.    Audubon Companies knew it did not hire the Inspectors to work on a project-by-project basis.

151.    Audubon Companies knew the Inspectors relied on it for work and compensation.

152.    Audubon Companies knew the Inspectors' opportunity for profit or loss was negligible.

153.    Audubon Companies knew the Inspectors' income was limited to the day rate it paid them.

154.    Thus, Audubon Companies knew, should have known, or recklessly disregarded the fact that, as a matter of economic reality, the Inspectors were Audubon Companies' employees.

155.    Nonetheless, Audubon Companies misclassified the Inspectors as independent contractors.

156.    Audubon Companies' misclassification of the Inspectors as independent contractors was neither reasonable, nor was the decision to misclassify them as independent contractors made in good faith.

157.    Audubon Companies knew it was subject to the FLSA's overtime provisions.

158.    Audubon Companies knew the FLSA required it to pay non-exempt employees, including the Inspectors, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 a workweek.

159.    Audubon Companies knew each Inspector worked more than 40 hours in at least one workweek during the relevant period.

160.    Audubon Companies knew it paid its Inspectors a flat day rate based on a flat "10 or 12-hour" day for each day they actually worked, regardless of the actual number of hours they work a day.

161.    Audubon Companies knew it did not pay its Inspectors on a "salary basis."

162.    Audubon Companies knew it did not pay its Inspectors any guaranteed "salary" that was not subject to reduction based on the quantity or quality of work.

163.    Thus, Audubon Companies knew its disguised day rate pay scheme did not satisfy the "salary basis" test.

164.    Audubon Companies knew, or showed reckless disregard for whether, its conduct described in this Complaint violated the FLSA.

165.    Audubon Companies knowingly, willfully, and/or in reckless disregard carried out this illegal disguised day rate pay scheme that systematically deprived the Inspectors of overtime pay, in willful violation of the FLSA.

166.    Indeed, Audubon Companies and/or related entities have been sued previously for failing to pay employees (including inspectors) overtime wages. *See, e.g.*, *Owen v. Audubon Field Sols., LLC*, No. 2:24-cv-00215 (D. N.M.); *Byrd v. Audubon Field Sols., LLC*, No. 2:22-cv-03566 (E.D. La.).

## <u>COUNT I</u>
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE MEMBERS)

167.    Hardy brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

168.    Audubon Companies violated, and is violating, the FLSA by employing non-exempt employees (Hardy and the other Inspectors) in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates at least 1.5 times their regular rates of pay for the hours worked after 40 a workweek.

169.    Audubon Companies' unlawful conduct harmed Hardy and the other Inspectors by depriving them of the overtime wages they are owed.

170.    Accordingly, Audubon Companies owes Hardy and the other Inspectors the difference between the rate actually paid and the proper overtime rate.

171.    Because Audubon Companies knew, or showed reckless disregard for whether, its disguised day rate pay scheme violated the FLSA, Audubon Companies owes Hardy and the other Inspectors these wages for at least the past 3 years.

172.    Audubon Companies is also liable to Hardy and the other Inspectors for an amount equal to all their unpaid overtime wages as liquidated damages.

173.    Finally, Hardy and the other Inspectors are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
#### (NEW MEXICO CLASS MEMBERS)

174.    Hardy brings his NMMWA claims as a class action on behalf of himself and the other Inspectors pursuant to FED. R. CIV. P. 23.

175.    Audubon Companies' conduct violates the NMMWA. *See* N.M.S.A. §§ 50-4-20, *et seq.*

176.    At all relevant times, Field Solutions was subject to the NMMWA because Field Solutions was (and is) an "employer" within the meaning of the NMMWA. N.M.S.A. § 50-4-21(B).

177.    At all relevant times, Engineering was subject to the NMMWA because Engineering was (and is) an "employer" within the meaning of the NMMWA. N.M.S.A. § 50-4-21(B).

178.    At all relevant times, Field Solutions employed Hardy and each New Mexico Class Member as its covered "employees" within the meaning of the NMMWA. N.M.S.A. § 50-4-21(C).

179.    At all relevant times, Engineering employed Hardy and each New Mexico Class Member as its covered "employees" within the meaning of the NMMWA. N.M.S.A. § 50-4-21(C).

180.    The NMMWA requires employers, like Field Solutions and Engineering (collectively Audubon Companies), to pay non-exempt employees, including Hardy and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in any 7-day week. N.M.S.A. § 50-4-22(D).

181.    Hardy and the other New Mexico Class Members are entitled to overtime pay under the NMMWA.

182.    Audubon Companies violated, and is violating, the NMMWA by employing non-exempt employees (Hardy and the other New Mexico Class Members) for workweeks longer than 40 hours without paying overtime wages for all hours worked over 40 each workweek. *See* N.M.S.A. § 50-4-22(D).

183.    Audubon Companies' improper practices at issue were (and are) part of a continuing course of conduct, entitling Hardy and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

184.    Audubon Companies' unlawful conduct harmed Hardy and the other New Mexico Class Members by depriving them of the premium overtime wages they are owed.

185.    Accordingly, Hardy and the other New Mexico Class Members are entitled to recover their unpaid overtime wages in amount equal to 1.5 times their regular rates of pay for their hours worked over 40 in a week; "an additional amount equal to twice the unpaid … wages" as treble

damages, N.M.S.A. § 50-4-26(C); and attorneys' fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

### RELIEF SOUGHT

WHEREFORE, Hardy, individually and on behalf of the other Inspectors, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Inspectors allowing them to join this action by filing a written notice of consent;

b.    An Order designating this lawsuit as a class action and certifying the putative class of Inspectors pursuant to FED. R. CIV. P. 23;

c.    An Order designating Hardy and his counsel to represent the interests of the Inspectors;

d.    An Order finding Audubon Companies liable to Hardy and the other Inspectors for unpaid overtime wages owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages;

e.    A Judgment against Audubon Companies awarding Hardy and the other Inspectors all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

f.    An Order finding Audubon Companies liable to Hardy and the other Inspectors for all unpaid overtime wages owed under the NMMWA, plus treble damages in an amount equal to two times their unpaid overtime wages;

g.    A Judgment against Audubon Companies awarding Hardy and the other Inspectors all their unpaid overtime wages, treble damages, and any other penalties or damages available under the NMMWA;

h.    An Order awarding attorneys' fees, costs, and expenses;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Dated: August 20, 2024

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*
Michael A. Josephson
Andrew W. Dunlap
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:      (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:      (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR HARDY AND
THE INSPECTORS**